IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIDGETTE FORDYCE,　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　-vs-　　　　　　　　　　　　　　)　　　　Civil Action No. 16-501
　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN,　　　　　　　)
COMMISSIONER OF SOCIAL SECURITY,　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)

## OPINION and ORDER OF COURT

AMBROSE, Senior District Judge

## SYNOPSIS

Pending before the court are Cross-Motions for Summary Judgment. (ECF Nos. 7, 9). Both parties have filed Briefs in Support of their respective Motions (ECF Nos. 8, 10) and they are ripe for disposition. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment (ECF No. 9) and granting Defendant's Motion for Summary Judgment. (ECF No. 7).

## I.　BACKGROUND

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Fordyce claims disability due to panic disorder, anxiety and post-traumatic stress disorder ("PTSD").

Fordyce was born on July 15, 1981.  She described a tumultuous childhood with a father who was severely physically abusive to her mother every day.  Nevertheless,

1

Fordyce graduated from high school and attended Laurel Business Institute for 18 months, where she obtained a certificate to become a medical assistant.

Fordyce has lived with her fiancé for fifteen years and has three children aged 13, 7 and 5. Her fiancé is employed by a utility company and works out of state most of the time. Fordyce testified that she has numerous anxieties and fears regarding her childrens' safety. For example, she drives the younger two children to school because she fears that they may be injured while riding the school bus. On the other hand, her oldest child rides a school bus for 30 minutes each way, because Fordyce is unable to drive that far. R. at 50. Fordyce had a serious car accident in October 2013, in which the car hydroplaned and flipped while her daughter was in the back seat. Fordyce acknowledged that doing chores around the house helps take her mind off worrying, but explained that she is unable to do tasks in a work setting because she cannot function with people around and gets paralyzed with fears for her children. R. 53-54.

In her application, Fordyce alleged that she has been disabled since February 1, 2005, when she was 23 years old, although the relevant time period for her SSI claim is limited to the date of her application for benefits on October 17, 2012. Fordyce had work experience prior to 2005 including several stints as a telephone solicitor, part-time at a medical practice, for a year part-time stocking shelves, and at a temporary service. She voluntarily quit several of these jobs. Her anxiety worsened in 2005 when her father re-established contact with her. R. 56.

In 2008, Fordyce received treatment for depression and anxiety at Cherry Tree Medical Associates ("Cherry Tree"). In March 2009, Fordyce reported that her anxiety had resolved with Xanax and that she was no longer taking it. R. 268. She received no

medical treatment until October 2010, when she was placed on Xanax again. The medical record was again silent until January 2012. A Cherry Tree office treatment record by Sajid Peracha, M.D. dated January 4, 2012 described Fordyce as a "home-stay mom." R. 205.

The treatment notes from Cherry Tree consistently reflected that Fordyce was not in acute distress; that she was alert and cooperative, with normal mood and affect, and normal attention span and concentration. The January 31, 2012 treatment notes reflect an adverse reaction to Celexa, but also note that Fordyce was not depressed, was doing things around the house, and played with her children. R. 227. Fordyce reported that Xanax had helped her with panic attacks in the past. R. 227. The treatment note on February 10, 2012 reflected that Fordyce had been taken off Celexa and treated with Xanax "and is only taking once and her mood is stable." R. 223. The treatment note of July 1, 2014 reflected that Fordyce was staying busy, performing activities of daily living and was not taking any medication. R. 402.

Fordyce has had repeated periods of time during which she lacked medical insurance, and thus, did not participate in counseling or take Xanax, which had previously been effective in treating her anxiety symptoms. R. 402. Even during July 2012 – July 2013, when Fordyce had medical insurance and was covered for Xanax, she only took half of the prescribed dose because she was anxious about taking it. She has never been hospitalized due to her anxiety or PTSD, although she almost called 9-1-1 once during a panic attack. R. 46.

From January 2012 to July 2014, Fordyce received counseling therapy from Lisa A. Smith Wally, M.S. Wally noted on January 4, 2012 that Fordyce's orientation, affect,

insight, attention/concentration, impulse control, memory and judgment were all appropriate, but assigned a GAF score of 35. R. 308-09. Wally recommended talk therapy to help Fordyce deal with her anxiety to live life more fully. Wally noted that she had witnessed panic attacks and that the Burns Anxiety Inventory indicated that Fordyce experienced "extreme anxiety or panic." R. 325.

On February 14, 2013, John Carosso, Psy.D., performed a physchological consultative examination. Dr. Carosso diagnosed Fordyce with panic disorder with agoraphobia, PTSD, generalized anxiety disorder and dysthymic disorder. He assigned a GAF score of 45. R. 295-97. Dr. Carosso opined that her lack of focus and concentration posed a marked restriction on her ability to work; and that her inability to work with others posed an extreme restriction. R. 294, 298. He explained that Fordyce was "intelligent and capable of understanding and retaining information but her ability to follow through with consistency and reliability appears to be somewhat limited given her anxiety reactions and tendency toward avoidance." R. 296.

In March 2013, Valorie Rings, Psy.D., performed a record review and assessed Fordyce's Mental Residual Functional Capacity ("MRFC"). Dr. Rings disagreed with the opinion expressed by Dr. Carosso as inconsistent with the evidence in the medical record, too reliant on the subjective complaints of the patient, and overstating the severity of Fordyce's functional restrictions. Dr. Ring opined that Fordyce "is able to meet the mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." R. 76.

Administrative Law Judge ("ALJ") Karen Kostol held a hearing on August 4, 2014, at which Plaintiff and Vocational Expert ("VE") Larry Ostrowski testified. In a

written opinion dated September 19, 2014, the ALJ held that Plaintiff was not disabled under the Act. (R. 12-23).  The ALJ found that Fordyce had severe impairments of depression/dysthymic disorder; panic disorder with agoraphobia; and generalized anxiety disorder/PTSD that did not rise to listed impairments.  The ALJ then prepared a MRFC and determined that Fordyce was capable of work in a low stress job having only occasional decision-making; occasional changes in work setting; no strict production quotas; no interaction with the general public; and only occasional interactions with co-workers and supervisors.  Although Fordyce was unable to return to her past work in telephone solicitation, the VE testified that a person with these limitations could perform numerous medium-exertional, unskilled jobs such as kitchen helper and industrial cleaner.  Accordingly, the ALJ found that Fordyce was not disabled.

After exhausting all administrative remedies, Plaintiff filed this action in this Court. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 7, 9). The issues are now ripe for review.

## II.    LEGAL ANALYSIS

### A.    Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v.*

*Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is

unable to return to her previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

## B.    Plaintiff's Contentions

Plaintiff challenges only step 5 of the ALJ's analysis. Fordyce argues that the ALJ's findings regarding her ability to engage in substantial gainful activity are not supported by substantial evidence. Specifically, she contends that the ALJ erred in finding that her hearing testimony lacked credibility; by putting too much emphasis on her ability to perform activities in the home in her role as a mother; by failing to acknowledge that her treatment history was inconsistent due to the loss of medical insurance; and by rejecting the opinion of Dr. Carosso.

## C.    Discussion

It is undisputed that Fordyce has no exertional limitations. Thus, the sole issue in dispute is whether the ALJ properly assessed her MRFC and the extent of her anxiety and panic attacks on her ability to work.

It is well-established that the ALJ is responsible to determine a claimant's credibility. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974). Ordinarily, an ALJ's credibility determination is entitled to great deference. *See Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014); *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by

the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." S.S.R. 96-7p.

In this case, the ALJ properly gave specific reasons based on the record for finding that Fordyce's hearing testimony regarding the intensity, persistence and limiting effects of her symptoms was not entirely credible. The ALJ pointed to the generally conservative treatment record, the lack of any hospitalization, the apparent effectiveness of Xanax in resolving her symptoms, and the relatively long gaps in the treatment record during which it appeared that Fordyce was stable. The ALJ also cited the consistent notes from the primary treating physicians at Cherry Tree to the effect that Fordyce was alert, cooperative and had a normal mood, affect, attention span and concentration.

In addition, the ALJ carefully explained why the hearing testimony regarding the extent of her debilitation was inconsistent with the array of daily living activities she was able to perform (cleaning, cooking, laundry, driving, shopping, handling finances, using the computer, etc., R. 14); and her ability to care for her children on her own while her fiancé worked out of state. There is no evidence in the record that the ALJ improperly diminished Fordyce's credibility due to her status as a mother. To the contrary, the record reflects a fair, balanced assessment of the testimony, in which the ALJ focused on the physical and emotional demands of her care-giving daily activities. R. 20.

The Court declines Plaintiff's invitation to overturn the ALJ's interpretation of the treatment note that described Fordyce as a "home-stay mom." R. 205. The ALJ's interpretation is supported by substantial evidence and is cited in connection with the

(uncontested) fact that "she quit working at several places for reasons unrelated to her mental symptoms." R. 20. It is readily apparent that the ALJ considered the entire record, including the hearing testimony regarding Fordyce's loss of her medical insurance. *See, e.g.,* ALJ Opinion, R. 14 (which makes numerous specific references to the Hearing Testimony).

In summary, Plaintiff's contentions of error are not persuasive. There was substantial evidence to support the ALJ's credibility findings regarding the extent of Fordyce's symptoms. *See Snedeker v. Comm'r of Soc. Sec*., 244 F. App'x 470, 474 (3d Cir. 2007) (non-precedential) ("complaints of disabling symptoms are undermined by [claimant] not taking prescribed medication and infrequently seeking medical treatment. Credence for [ ] asserted limitations is also weakened by [claimant's] ability to adequately perform activities of daily living, as well as the absence of objective medical evidence corroborating [her] statements. This evidence is adequate to support the ALJ's credibility finding.")

The ALJ also properly articulated specific reasons why she gave the opinion of Dr. Carosso "little weight." In this case, the ALJ acknowledged Dr. Carosso's opinions regarding Fordyce's marked and extreme limitations, but explained that his opinions (1) relied heavily on Fordyce's subjective descriptions of her condition; (2) were inconsistent with the totality of the medical record; and (3) that Dr. Carosso had not reviewed the treatment notes from Cherry Tree, the primary care provider. The ALJ further explained how the limitations identified by Dr. Carosso could be mitigated by limiting Fordyce to a low-stress job. The ALJ went on to opine that the conflicting medical opinion of Dr. Rings was largely consistent with the objective medical record.

An ALJ may credit opinions of state agency physicians over contradictory treating physician opinions if the state agency opinion is supported by the record evidence. *See Chandler v. Commissioner of Soc. Sec.*, 667 F.3d 356, 361-62 (3d Cir. 2011). Nevertheless, the ALJ explained that she gave Dr. Rings' opinion only "some weight" and instead gave Fordyce the "benefit of the doubt" by including in the MRFC additional limitations that were not contemplated by Dr. Rings. R. 19. In summary, the ALJ properly explained why she gave Dr. Carosso's opinion little weight and the reasons for her findings regarding Fordyce's MRFC.

**<u>CONCLUSION</u>**

In accordance with the foregoing, the ALJ's decision was supported by substantial evidence, and will be affirmed. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIDGETTE FORDYCE,               )
                    Plaintiff,   )
                                 )
     -vs-                        )          Civil Action No. 16-501
                                 )
CAROLYN W. COLVIN,               )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
     Defendant.                  )

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 24th day of October, 2016, it is hereby ORDERED, ADJUDGED,

and DECREED that Plaintiff's Motion (ECF No. 9) is **DENIED** and Defendant's Motion

(ECF No. 7) is **GRANTED**.


                              BY THE COURT:
                              s/ Donetta W. Ambrose
                              Donetta W. Ambrose
                              United States Senior District Judge